Ronald F. Lopez (SBN 11756)
Robert A. Weikert (SBN 121146)
Sushila Chanana (SBN 254100)
NIXON PEABODY LLP
One Embarcadero Center, 18th Floor
San Francisco, CA 94111–3600
Tel.: 415.984.8200
Fax: 415.984.8300

Robert E. Krebs (SBN 57526)
Christopher L. Ogden (SBN 235517)
NIXON PEABODY LLP
200 Page Mill Road, 2nd Floor
Palo Alto, CA  94305–2022
Tel.: 650.320.7700
Fax: 650.320.7701

Attorneys for Plaintiff
TELUS CORPORATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TELUS Corporation, a foreign corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DENNIS WATSON, an individual,<br><br>Defendant. | Case No.:  3:07-cv-03434 (VRW)<br><br>**PLAINTIFF TELUS CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>Date:      November 12, 2009<br>Time:     10:00 a.m.<br>Judge:    Honorable Vaughn R. Walker<br>Location: Courtroom 6, 17th Floor |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................................. 1

II.  ARGUMENT ....................................................................................................................... 3

    A.  Watson Has Not Met His Burden to Defeat TELUS' Summary Judgment Motion ................................................................................................ 3

    B.  There is No Genuine Issue as to the Element of Copying as Evident from Watson's Admissions and Postings on YouTube ................................... 4

    C.  There is No Genuine Issue as to the Element of Ownership as Evident from TELUS' Creation of the Original Works and Copyright Registration Certificates in the Original Works ............................................... 4

    D.  Watson's First Amendment Defense is Misplaced and Meritless Because it is Subsumed Under the Fair Use Defense, and if the Fair Use Defense has been Raised, it Also Fails Because Watson has Not Sustained His Burden ...................................................................................... 6

III. CONCLUSION .................................................................................................................. 11

# TABLE OF AUTHORITIES

**Page**

### Federal Authorities

### Cases

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................................. 3

*Atari Games Corp. v. Nintendo of American Inc.*,
   975 F.2d 832 (Fed. Cir. 1992) .................................................................................. 8

*Block v. City of Los Angeles*,
   253 F.3d 410 (9th Cir. 2001) .................................................................................... 4

*Cable/Home Communication Corp. v. Network Productions, Inc.*,
   902 F.2d 829 (11th Cir. 1990) ................................................................................ 20

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994) .............................................................................................. 8, 9

*Carmen v. San Francisco Unified School Dist.*,
   237 F.3d 1026 (9th Cir. 2001) .................................................................................. 3

*Elvis Presley Enters. v. Passport Video*,
   357 F.3d 896 (9th Cir. 2004) ................................................................................. 6-7

*Harper & Row v. Nation Enterprises*,
   471 U.S. 539 (1985) ........................................................................................ 8, 9, 10

*Kaiser Cement Corp. v. Fischbach and Moore, Inc.*,
   793 F.2d 1100 (9th Cir. 1986) .................................................................................. 3

*Kelly v. Arriba Soft Corp.*,
   336 F.3d 811 (9th Cir. 2003) .................................................................................... 6

*Keenan v. Allan*,
   91 F.3d 1275 (9th Cir. 1996) .................................................................................... 3

*Los Angeles News Serv. v. CBS Broad., Inc.*,
   305 F.3d 924 (9th Cir. 2002) .................................................................................... 8

*Religious Tech. Ctr. v. Netcom On-Line Commun. Servs.*,
   923 F. Supp. 1231 (N.D. Cal. 1995) ................................................................... 8, 10

*Sega Enterprises Ltd. v. Maphia*,
   857 F. Supp. 679 (N.D. CA 1994) ........................................................................... 8

*Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*,
   562 F.2d 1157 (9th Cir. 1977) .................................................................................. 7

*Sony Corp. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) .................................................................................................... 9

*T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Assoc.*,
    809 F.2d 626 (9th Cir. 1987) ...................................................................................... 3

*Veliz v. Cintas Corp.*,
    2008 U.S. Dist. LEXIS 95153 (N.D. Cal. 2008) ........................................................ 4

**Statutes and Rules**

Fed. R. Civ Pro. Rule 56(e) ................................................................................................ 3

17 U.S.C. § 107 ................................................................................................................. 7

**<u>Canadian Authorities</u>**

**Cases**

*Alkot Industries Inc. v. Consumers Distributing Co. Ltd.*,
    6 C.P.R. (3d) 168 (1985) ............................................................................................. 5

*Bishop v. Telemetropole,*
    4 C.P.R. (3d) 349 (1985) ............................................................................................. 5

*Oakley Inc. v. Shoppers Drug Mart Inc.,*
    2001 FCT 226 (2001) .................................................................................................. 5

*Zamacoïs v. Douville*,
    3 Fox Pat. C. 44 (1943) ............................................................................................... 5

**Statutes and Rules**

Section 53(2) of the Canadian Copyright Act, R.S.C. 1985, c. C-42 ................................. 5

**Other Authorities**

Canadian Copyright Act – Annotated, Robic Copy Ann. 53 § 6.1 ¶ 10 (1997) ................. 5

TELUS Corporation ("TELUS") hereby submits this Reply to Defendant Dennis Watson's ("Watson") Response to TELUS' Motion for Summary Judgment ("Opposition").

I.  **INTRODUCTION**

This case has nothing to do with "censorship," the First Amendment, the Canadian Charter of Rights, or the "corrupt" World Intellectual Property Organization ("WIPO"), and everything to do with Watson's unlawful use of TELUS' copyright material. TELUS has moved for summary judgment on eleven videos Watson wrongfully published on YouTube (the "Infringing Clips") on the grounds that they contain copyrighted material owned by TELUS and thus infringe TELUS' copyrights. While Watson's Opposition is difficult to follow, Watson does not, and indeed cannot, challenge eight of the Infringing Clips (the "Only-TELUS-Media Copies") (*see* Dkt. No. 51 ("TELUS' Opening SJ Memo."), at pg. 3 (listing the Infringing Clips at issue)).[1] All of the eight Only-TELUS-Media Copies contain unedited, unaltered, and substantial segments of unpublished, copyrighted videos made and owned by TELUS of an internal TELUS event.[2] And as described in TELUS' moving papers, Watson has admitted that he obtained the copyrighted material from a former TELUS employee, and thus acted willfully and with knowledge that this material belonged to TELUS. Therefore, as to these eight Only-TELUS-Media Copies, liability should be deemed undisputed and the Court should render judgment in TELUS' favor.[3]

///

---

[1] Watson's representation that TELUS did not provide the Court with copies of Watson's 11 Infringing Clips (Opposition, 2:21-23; 7:7-9) is false. TELUS lodged both its Original Works and the Infringing Clips with the Court in CD format on October 16, 2009. *See* Dkt. No. 53 (Notice of Original Works and Infringing Clips Lodged with the Court).

[2] *See* Video Nos. 1-7 and No. 9 (TELUS' Opening SJ Memo, at pg. 3 and Dkt. No. 54, Ex. A (C. Volker's Declaration and Chart Comparing Original Works to Infringing Clips).

[3] Watson's suggestion that because a portion of the TELUS internal corporate event involved a take on the "American Idol" television show and "role playing" by various TELUS employees this somehow removed it from copyright protection is misplaced and unsupported by any legal authority. Watson is confusing a "parody" defense *TELUS* may have to a trademark or copyright claim against it by the owners of the American Idol intellectual property rights. That defense is not available to Watson, though, because the videos he posted using actual and verbatim *TELUS* copyrighted material did not constitute "parodies" or satire under any definition of those terms. Indeed, for the most part he just posted arbitrary segments of the copyrighted works (out of context) without any other material or commentary.

1    The only videos that Watson arguably challenges are numbers 8, 10, and 11 (the "Mixed-TELUS-Media Copies").[4]  *See* TELUS' Opening SJ Memo., at p. 3.  Although Watson has not come forward with ***any*** competent or admissible evidence to support his factual allegations,[5] nor is he able to point to any legal authority or specific facts supporting the positions that he has advanced with respect to these three Mixed-TELUS-Media Copies, he seems to contend that his use of TELUS material was simply *de minimis* and thus he did not infringe TELUS' rights.  As discussed below, while admittedly Watson's use of TELUS' copyrighted work in the three Mixed-TELUS-Media Copies was not as pervasive and egregious as in the eight Only-TELUS-Media Copies, the three Mixed-TELUS-Media Copies still contain TELUS' copyrighted work, and the infringing portions are the centerpiece and focus of the videos.  But for the infringing portions, it is highly unlikely that Watson would have created them.  Finally, since the infringing portions of the three Mixed-TELUS-Media Copies are simply excerpts of the eight Only-TELUS-Media Copies, they are obviously all part of the same group or "series."[6]

The First Amendment does not permit Watson to infringe and trample upon TELUS' copyrights, and Watson has failed to provide any legal analysis whatsoever explaining how his unauthorized use of internal TELUS training materials could qualify as some sort of "fair use." Whatever Watson may think of TELUS, its executives, or the company's policies, he does not have the right to make wholesale use of its copyrighted material.  Summary judgment should therefore be granted in TELUS' favor.

///

///

---

[4]   Entitled, "Daren's Dream," "Happy Scabbie," and "Darren Scare'em Union Bustin Blues." See Dkt. No. 54, Ex. A (C. Volker's Declaration and Accompanying Chart Comparing Original Works to Infringing Clips).

[5]   In addition to this Reply Brief, TELUS also concurrently filed formal objections to the one declaration Watson did submit.

[6]   When TELUS first became aware of Watson's videos, it identified twenty-six (26) videos and pursuant to the Digital Millennium Copyright Act ("DMCA"), and it sought and obtained removal of all of those videos from the YouTube site.  This motion, however, only encompasses eleven of those videos, and TELUS is presently considering whether to withdraw its DMCA "take down notice" as to the remaining videos.

-2-

## II. ARGUMENT

### A. Watson Has Not Met His Burden to Defeat TELUS' Summary Judgment Motion

The Court is "not required to comb the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Rather, to defeat TELUS' summary judgment motion, Watson is required to set forth ***specific facts*** showing there is a genuine issue for trial. Fed. R. Civ. Pro. 56(e); *see also Kaiser Cement Corp. v. Fischbach and Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986); *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987) (citations omitted) ("Clearly, the non-moving party must do more than simply show there is some metaphysical doubt as to the material fact."). Watson cannot rely on allegations in his answer or other pleadings, but is required to present "concrete evidence" from which a judge or reasonable jury could return a favorable decision. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Thus, "[i]f evidence is merely colorable . . . or is not significantly probative" about material facts that are essential elements of Plaintiff's claim, summary judgment may be granted. *Id.* at 249. *See also Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (to defeat summary judgment, the non-moving party is required to "identify with reasonable particularity the evidence that precludes summary judgment.").

Here, Watson not only lacks any significant or probative evidence, but he has not, and cannot, come forward with any evidence to rebut the fact that: (1) TELUS owns a copyright in the original videos and pictures (the "Original Works"); and (2) Watson copied TELUS' Original Works (the *only* two material issues and essential elements relevant to the present motion). Not surprisingly, Watson's Opposition, like his prior filings, is full of repeated factual statements, which are wholly unsupported by any evidence, let alone a declaration under penalty of perjury. In fact, the record is replete with undisputed evidence of Watson's copyright infringement. Further, nearly every document filed by Watson in the last two years contains repeated admissions, recognizing that TELUS created the Original Works for a business purpose and Watson copied these works without authorization.[7]

---

[7] *See* TELUS' Opening SJ Memo, at pgs. 4-5 and 9-12 (Watson's admissions). Watson's attempt to now retract or deny his admissions (Opposition, 4:4-6) is to no avail. He does not actually

-3-

### B. There is No Genuine Issue as to the Element of Copying as Evident from Watson's Admissions and Postings on YouTube

There is no dispute that Watson copied the Original Works. In fact, in his Opposition to TELUS' Motion, Watson makes yet further admissions of copying when he states:

- "The name of some of the video clips *I posted* is Telus Idol." (Dkt. No. 52, at 3:22 (emphasis added)); and

- "The quote from document 51 starting on page 11 in essence is about Ms. Clark stating that Telus may have an argument for copyright infringement on some of the stuff and I *agreed* naming Telus Idol. I said they [TELUS] have a legitimate claim there." (*Id.*, 5:18-19 (emphasis added).)

Further, Watson does not deny that he copied TELUS' Original Works in any of the documents he filed in the last two years. Thus, the element of copying is undisputed here. It is an unequivocal and material fact that Watson copied TELUS copyright materials.

### C. There is No Genuine Issue as to the Element of Ownership as Evident from TELUS' Creation of the Original Works and Copyright Registration Certificates in the Original Works

The only other relevant issue – whether TELUS owns a copyright in the Original Works – is also undisputed and has been proven by TELUS via two independent means: (1) The Original Works were created by TELUS employees acting with the scope of their employment; and (2) TELUS holds Canadian copyright registration certificates in the Original Works. *See* TELUS' Opening SJ Memo, at pgs. 6-10. Watson does not dispute nor contradict TELUS' ownership interest based on the undeniable fact that TELUS created the Original Works.

///

---

deny *any* individual admission as described in TELUS' Opening SJ Memo. Rather he just provides a conclusory and off-topic statement, "[TELUS] claims that I have repeatedly admitted to using TELUS' copyright materials in the Infringing clips. I have not. They quoted me three times as stating I posted ex[c]er[p]ts from TELUS Idol on YouTube." *Id*. Although the statement is confusing (he does not deny his admissions, but then states without any justification that there were no admissions), what is clear is that Watson repeatedly admitted to both copying and TELUS' ownership interest, the only two points relevant to the present motion. He cannot "create a genuine issue of material fact to survive summary judgment by contradicting his earlier version of the facts." *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001). *See also Veliz v. Cintas Corp.*, 2008 U.S. Dist. LEXIS 95153 at *28-29, n.12 (N.D. Cal. 2008) ("[P]arties cannot create issues of fact on summary judgment by submitting declarations to contradict the declarant's deposition or other sworn testimony.").

-4-

Instead, Watson makes an unsuccessful attempt to refute TELUS' valid and legitimate ownership interests by raising issues with the copyright registration certificates. Although it is not clear from his brief, Watson appears to argue that TELUS' registrations are invalid because: (1) they were obtained after the alleged infringement; (2) they include spoofs of songs from artists; and (3) they do not have the term "TELUS Idol" in the name. Not surprisingly, Watson offers no legal basis for these conclusory and absurd assertions. Rather, they seem to be random and desperate arguments used with the hope that something will override TELUS' legitimate ownership rights. However, Watson is mistaken.

First, Watson's suggestion that TELUS' registrations are somehow invalid because they were obtained after Watson's infringement is without merit because under Canadian copyright law, a copyright exists from the moment the work is created regardless of whether or not there is a registration. *Zamacoïs v. Douville*, 3 Fox Pat. C. 44, ¶ 113 (1943) (Exchequer Court of Canada) (finding that the "formality" of registration is "not necessary for the existence of copyright."). Additionally, the Canadian Copyright Act provides that "[a] certificate of registration of copyright is evidence that the copyright subsists and that the person registered is the owner of the copyright." Section 53(2) of the Canadian Copyright Act, R.S.C. 1985, c. C-42. The Canadian Copyright Act states neither time limitation nor exceptions to this principle. *Id*.

Canadian courts have held that even where a copyright registration is obtained well after an infringement, the "certificate of registration is nevertheless evidence that the person registered is the owner of the copyright." *See* Canadian Copyright Act – Annotated, Robic Copy Ann. 53 § 6.1 ¶ 10 (2007), *citing Bishop v. Telemetropole*, 4 C.P.R. (3d) 349 (1985) (overruled on other grounds), and noting that *Bishop* still stands for the proposition that timing of the registration is irrelevant for ownership purposes. *See also Alkot Industries Inc. v. Consumers Distributing Co. Ltd.*, 6 C.P.R. (3d) 168, ¶ 9 (1985); *Oakley Inc. v. Shoppers Drug Mart Inc.* 2001 FCT 226, ¶ 33 (2001) ("The production of a certificate of copyright registration creates a rebuttable presumption of title and ownership. Absent any evidence to the contrary, the chain of title may well be irrelevant."). Thus, ownership vests in the registering party regardless of when the alleged infringement took place and,

-5-

even if Watson had validly contested TELUS' certificates, he is still required to present specific, concrete, and reasonably particular evidence to counter TELUS' evidence of ownership (*i.e.*, copyright registrations), something he has not and cannot do.  *See* discussion in Section II.A *supra*.

As to his second complaint about TELUS' registrations, there is no law supporting Watson's assertion that a copyright registration is somehow invalid if it pertains to a work that includes employees singing songs in a "karaoke-style" setting at a company event *after* replacing the lyrics so that the songs discuss a company's products and people.[8]

Finally, since the Original Works were created during a TELUS Sales Conference, and included more than just the TELUS Idol videos, TELUS named the copyright registrations "TELUS Sales Kickoff 2004" and "TELUS Sales Kickoff 2004 – Darren Entwistle."[9]  The registration names correspond to the events and/or speaker recorded.  Notwithstanding the fact that this point is completely irrelevant to the issue of ownership, TELUS is free to name its copyrighted works as it pleases.

Since Watson's three weak and immaterial points about TELUS' registration certificates do not in any way refute TELUS' ownership interests in the Original Works, there is no genuine issue as to any material fact of ownership.  Accordingly, there is no dispute as to the two elements TELUS is required to prove to prevail on summary judgment as to copyright infringement: (1) ownership of the copyright; and (2) copying by the defendant. *Kelly v. Arriba Soft Corp*., 336 F.3d 811, 817 (9th Cir. 2003) (granting plaintiff's motion for summary judgment for copyright infringement).

### D. Watson's First Amendment Defense is Misplaced and Meritless Because it is Subsumed Under the Fair Use Defense, and if the Fair Use Defense has been Raised, it Also Fails Because Watson has Not Sustained His Burden

Watson seems to claim that he has a First Amendment right to use TELUS' copyright materials.  *See* Opposition, at pgs. 4 and 6.  However, this defense is misplaced because "First

---

[8]  See videos lodged as "Original Works" on October 16, 2009 (Dkt. No. 53).  For example, TELUS' lyrics to the song "TELUS Boy," adapted from Avril Lavigne's song, "Skater Boy," discusses an executive's work schedule.  Also, TELUS' lyrics to the song, "Up!," adapted from Shania Twain's song, "Up!," discusses TELUS' sales going up.  *See also* footnote 3, *supra*,

[9]  *See* Declaration of Xavier Beauchamp-Tremblay (Dkt. No. 50-2, Exs. A-B, Canadian Registration Nos. 1070057 and 1071360, respectively).

-6-

1  Amendment concerns in copyright cases are subsumed within the fair use inquiry." *Elvis Presley*

2  *Enters. v. Passport Video*, 357 F.3d 896 (9th Cir. 2004) (enjoining further distribution of the

3  infringers' video because the infringement was not a fair use).  In *Elvis*, the Ninth Circuit did not

4  consider defendant's First Amendment argument, stating, "We need not jump into this briar patch

5  [because] . . . if the use of the alleged infringer is not fair use, there are no First Amendment

6  prohibitions against granting a preliminary injunction." *Id. See also Sid & Marty Krofft Television*

7  *Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1170-1171 (9th Cir. 1977) ("[I]t is not

8  surprising that the few courts addressing the [First Amendment] issue have not permitted defendants

9  who copy a work's expression to hide behind the First Amendment.").  Thus, no First Amendment

10 analysis is required by the Court.

11      Since  First Amendment considerations are "subsumed" within the fair use defense, Watson

12 must affirmatively raise and prove fair use by a preponderance of the evidence.  Although Watson

13 has not expressly asserted "fair use" as a defense, nor has he provided any cognizable legal (or even

14 factual) analysis supporting any such defense, the fact is that he has not met (and cannot meet) his

15 burden of proof on this issue, and therefore, is not entitled to claim "fair use" as a matter of law.

16      Section 107 of the Copyright Act, entitled "Limitations on exclusive rights: Fair use"

17 provides, in pertinent part:

> The fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include --
>
> (1)   the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2)   the nature of the copyrighted work;
>
> (3)   the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4)   the effect of the use upon the potential market for or value of the copyrighted work.

-7-

1  17 U.S.C. § 107.  These four factors are not to be treated in isolation from each other, but are "to be
2  explored, and the results weighed together, in light of the purposes of copyright."  *Campbell v. Acuff-*
3  *Rose Music, Inc.*, 510 U.S. 569, 578 (1994).  *See also Religious Tech. Ctr. v. Netcom On-Line*
4  *Commun. Servs.*, 923 F. Supp. 1231, 1247 (N.D. Cal. 1995) ("[T]he results of all four factors must be
5  weighed together.").  Further, this factor analysis should not be "simplified with bright-line rules,"
6  but instead requires a "case-by-case analysis."  *Los Angeles News Serv. v. CBS Broad., Inc.,* 305 F.3d
7  924, 938 (9th Cir. 2002) (*quoting Campbell*, 510 U.S. at 577-78).

8  Here, as to the "purpose and character" of the eight Only-TELUS-Media Copies, Watson
9  simply posted verbatim excerpts with no commentary or additional material.  Thus, the postings were
10 not "transformative"[10] in any sense of the term and there is no discernable "purpose" other than to
11 infringe TELUS' rights.  *See, e.g., Religious Tech. Ctr.*, 923 F. Supp. at 1249 (finding against fair use
12 and stating, "The almost verbatim copying here shows that [defendant's] work is only minimally
13 transformative and that it is unlikely that [defendant] is 'truly pursuing a different functional milieu'
14 from the original.").

15 There may be a closer question with respect to the remaining three Mixed-TELUS-Media
16 Copies, where Watson interspersed the TELUS material with other non-infringing works.  But again
17 Watson used key portions of the copyrighted TELUS material as the centerpiece of these videos
18 (even though they are irrelevant and have nothing to do with whatever point he was trying to make),
19 and he knew that this material had been wrongfully taken from TELUS and was not meant to be
20 published.  *See Atari Games Corp. v. Nintendo of American Inc*., 975 F.2d 832, 843 (Fed. Cir. 1992)
21 ("To invoke the fair use exception, an individual must possess an *authorized* copy of a literary
22 work.") (*citing Harper & Row v. Nation Enterprises*, 471 U.S. 539, 562-63 (1985)) (emphasis
23 added); *Sega Enterprises Ltd. v. Maphia,* 857 F. Supp. 679, 687 (N.D. CA 1994) (same); *Harper &*
24 *Row*, 471 U.S. at 563 (trial court's finding that the defendant "*knowingly* exploited a purloined
25 manuscript" weighed against a finding of fair use on the first factor) (emphasis added).  Even
26 if Watson had somehow acquired authorized copies of the TELUS materials (which would have been

---

[10]   A transformative use adds "something new, with a further purpose or different character, altering the first [original work] with new expression, meaning, or message."  *Campbell*, 510 U.S. at 579.

-8-

impossible as the materials were unpublished and for internal TELUS use only), for all of the reasons set forth herein his admitted use of the material cannot constitute "fair use."

Second, as to the "nature of the copyrighted work," the fact that all of the TELUS material was unpublished,[11] while not dispositive, "is a critical element of its 'nature.'" *Harper & Row,* 471 U.S. at 564 ("[T]he scope of fair use is narrower with respect to unpublished works."). In addition, these works are clearly "creative" in nature and substance and not factual, which is precisely what the copyright laws were designed to protect. *Campbell,* 510 U.S. at 586 ("[T]his [second] factor calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied."); *Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417, 455 n.40 (1984) ("[W]orks such as original songs, motion pictures, and photographs taken for aesthetic purposes, are creative in nature and thus fit squarely within the core of copyright protection."). Here the Original Works are photographs and videos, and thus are "creative in nature," and are afforded more protection under copyright law.

Indeed, the "TELUS Idol" segments have nothing to do with TELUS corporate policy or anything else of substance or of public interest. The TELUS Idol event was obviously designed to be a lighter part of a broader corporate meeting. Further, again Watson knew (and it is clear by the nature and substance of the material) that videos from the TELUS Idol event were intended for internal company use only and that he had not obtained legitimate or authorized copies.

Third, as to the "amount and substantiality" factor, in all of the videos Watson used what could be considered the "heart" or "core" of the work. For example, Watson used an important part of TELUS CEO Darren Entwistle's speech on TELUS branding (a clearly highly-sensitive and competitive subject matter) in the beginning of video #8 ("Darren's Dream").[12] At least Watson

---

[11] *See* Dkt. No. 54, ¶ 3 (C. Volker's Declaration in support of TELUS' Motion) (The Original Works are "kept in a secure, locked vault on TELUS properties."). Although Watson takes issue with *how* TELUS kept the Original Works unpublished by stating that they were kept on "the Telus employee network" [i.e., internal network] instead (Opposition Brief, 5:1-4), this distinction is irrelevant because the undisputed fact is that the works were still unpublished (use of either a locked vault or a restrictive, internal employee network proves this).

[12] *See* TELUS' Opening SJ Memo., at pg. 3; *see also* Dkt. No. 54, Ex. A. (C. Volker's Declaration and Accompanying Chart Comparing Original Works to Infringing Clips).

-9-

1  viewed the segments he copied to be the "heart" or "core," otherwise why would he have used the
2  portions he did?  In absolute terms, the excerpts may have been relatively small, but in terms of the
3  "expressive value of the excerpts and their key role in the infringing work" the portions Watson used
4  were "substantial," as that term has been interpreted under the copyright laws.  *Harper & Row*, 471
5  U.S. at 610; *Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829, 844
6  (11th Cir. 1990) ("[A] small degree of taking is sufficient to transgress fair use if the copying is the
7  essential part of the copyrighted work.").  Furthermore, where the original work is unpublished, as
8  here, "less copying" is needed to find against fair use.  *Religious Tech. Ctr.,* 923 F. Supp. at 1247.
9  Thus, any purported argument by Watson that his use of TELUS' copyright materials was *de minimis*
10 is of little consequence.  His use did not have to be quantitatively substantial in order to defeat a "fair
11 use" defense because all eleven of the Original Works were unpublished.

12         Finally, as to the "effect on the market" factor, the TELUS material was intended for internal
13 company use and was not going to be published or marketed, so Watson's infringing conduct
14 arguably had no effect on its "value" (except as an internal company training tape) or marketability.
15 However, this alone does not mean that Watson's copying qualifies as fair use.  *See Religious Tech.*
16 *Ctr.,* 923 F. Supp. at 1249-1250 (finding against fair use on balance of all four factors even though
17 defendant's infringing use was noncommercial and likely had no effect on the marketability of the
18 plaintiff's works).  Thus, this fourth factor should be considered irrelevant in and to the "fair use"
19 analysis here.  In any event, as discussed above, all but three of the Infringing Clips were posted as
20 nothing more than verbatim copies and have no "message" or point of any kind associated with
21 them.  And as for the three Mixed-TELUS-Media Copies, where the video consisted of something
22 more than just TELUS' copyrighted material, the TELUS material appropriated by Watson had
23 absolutely nothing to do with any "message" Watson was trying to convey.  The excerpts were taken
24 out of context and again represent nothing more than a lighter portion of a broader corporate
25 meeting.  In short, there was no point in Watson's use of the TELUS material other than to harass
26 TELUS.
27 ///
28

## III. <u>CONCLUSION</u>

For the reasons set forth above, TELUS' Motion for Summary Judgment should be granted in its entirety. TELUS' ownership of the copyrights in its works and Watson's copying and infringement of those copyrights are undisputed. Watson's conduct cannot be regarded as "fair use" because his unauthorized use of unpublished (and misappropriated) TELUS works was for no discernible (let alone legitimate) purpose other than to harass TELUS and infringe its rights.

DATED: October 29, 2009                         Respectfully submitted,

                                                By: /s/ Sushila Chanana


                                                Ronald F. Lopez (SBN 11756)
                                                Robert A. Weikert (SBN 121146)
                                                Christoper L. Ogden (SBN 235517)
                                                Sushila Chanana (SBN 254100)
                                                NIXON PEABODY LLP

                                                Attorneys for Plaintiff
                                                TELUS CORPORATION